UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES PENA,<br>　　　　Plaintiff,<br><br>　　v.<br><br>STANLEY, et al.,<br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:20-cv-1683 (KAD) |

**INITIAL REVIEW ORDER**

Plaintiff, James Pena ("Pena"), currently confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this complaint *pro se* pursuant to 42 U.S.C. § 1983. Pena asserts Eighth Amendment claims for use of excessive force, failure to protect, and deliberate indifference to safety as well as state law tort claims against four defendants: former Unit Manager Stanley, Correctional Officer Rodriguez, Unit Manager Chevalier, and former Commissioner Cook. He seeks both damages and injunctive relief. The complaint was received on November 9, 2020. Pena's motion to proceed *in forma pauperis* was granted on November 16, 2020.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments

[they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On October 25, 2019, Pena was transferred from Corrigan-Radgowski Correctional Center ("Corrigan") to Walker Correctional Institution ("Walker"). Doc. No. 1 ¶ 9. Upon arrival Pena asked Unit Manager Stanley if he would be placed on "rec alone" status as he was on that status when previously confined at Walker. *Id.* ¶ 10. "Rec alone" status is similar to protective custody. *Id.* ¶ 11. Unit Manager Stanley told Pena that there was no recreation that day and to speak to him on Monday. *Id.* ¶ 10. Pena also wrote a request to Unit Manager Stanley and slipped it under his office door the same day. *Id.* ¶ 12.

Before Pena entered the housing unit, cells 73-84 were split into two groups: cells 73-78 were designated ticket group A1, cells 79-84 ticket group A2. *Id.* ¶¶ 13, 15. Pena was placed in cell 78 and the sign on the door was changed from A1 to A2. *Id.* ¶ 13. When Pena questioned the change, the officer told him to speak to Unit Manager Stanley. *Id.* ¶ 14.

Pena spoke to Unit Manager Stanley before recreation on Monday, October 28, 2019. *Id.* ¶ 16. Pena asked if he would be placed on "rec alone" status or switched to group A1. *Id.* Pena

reported that he had received verbal threats from inmates in group A2 because of his criminal charges. *Id.* Pena said he knew the inmates in group A1 as he had previously been in that group. *Id.* Unit Manager Stanley denied the request and told Pena to "stop complaining and man up." *Id.* Pena then stated that he feared for his life and requested "rec alone" status. *Id.* ¶ 17. Pena said he had previously been on "rec alone" status because he was labeled a "plate" as a result of his criminal charge for sexual assault. *Id.* ¶ 18. Unit Manager Stanley responded, "No. We['re] not playing musical cell. You['re] not in danger, stop the act." *Id.* ¶ 17.

Pena went to recreation yard two. *Id.* ¶ 18. As the other group A2 inmates entered the yard, Pena noted "the look of mischief on several of the[ir] faces" and asked Officer Rodriguez if he could go back inside. *Id.* ¶ 19. Officer Rodriguez said he could not go in before the end of the recreation period. *Id.* Pena then asked Officer Rodriguez to call the unit manager. *Id.* Officer Rodriguez refused and told Pena to "stop complaining." *Id.*

At the end of the recreation period, two inmates attacked Pena. *Id.* ¶ 20. After correctional officers broke up the fight, Pena was lying on the wet ground in the middle of the walkway to the recreation yard. *Id.* ¶ 21. Officer Rodriguez stomped on Pena's foot repeatedly for no reason. *Id.* When Pena said there was no need for the force as he was already handcuffed, Officer Rodriguez told him to "shup up." *Id.*

On November 27, 2019, Pena was transferred to Northern Correctional Institution ("Northern"). *Id.* ¶ 22. On December 1, 2019, Pena told the unit manager that he was labeled a "plate" and requested "rec alone" status. *Id.* ¶ 23. Pena was permitted to attend recreation alone until December 29, 2019 when he was put in the recreation yard with an active gang member. *Id.* ¶ 24. The gang member assaulted Pena. *Id.* When Pena questioned Unit Manager Chevalier

about being in recreation with a gang member, Unit Manager Chevalier stated that he was "not here to accommodate" Pena.  *Id.* ¶ 25.

Pena submitted a request to Commissioner Cook stating that various correctional employees, including Stanley, Chevalier, and Rodriguez, were "acting with malicious intent" because of Pena's prior lawsuits, complaints, and grievances and asking that they be punished, but "nothing was brought out of it."  *Id.* ¶ 26.

**Discussion**

Pens asserts claims of failure to protect and deliberate indifference to safety against defendants Stanley, Chevalier, and Cook and a claim for use of excessive force against defendant Rodriguez.  He also asserts state law claims for negligence against defendants Stanley, Chevalier, and Cook and assault and battery against defendant Rodriguez.[1]

**Use of Excessive Force**

Pena alleges that Officer Rodriguez used excessive force against him by stomping on his foot.  The "core judicial inquiry" in analyzing an excessive force claim is not "whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to

---

[1] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 34, 37 (2010) (per curiam).  To evaluate the defendant's conduct, the court considers various factors including: the extent of the injuries and the mental state of the inmate; "the need for application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendant[]; and any efforts by the defendant[] to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted).  In addition, Pena must show, objectively, that Officer Rodriguez's actions violated "contemporary standards of decency," which will always occur if the use of force is malicious. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Pena alleges that Officer Rodriguez stomped repeatedly on his foot for no reason and at a time when Pena was lying on the ground handcuffed.  The allegations plausibly state a claim for a malicious use of force.

**Failure to Protect / Deliberate Indifference to Safety**

Pena also alleges that defendants Stanley, Chevalier, and Cook were deliberately indifferent to his safety or failed to protect him from harm by ignoring his reports of threats and failing to continue him on "rec alone" status.

Prison officials have a duty to make reasonable efforts to ensure inmate safety.  This duty includes protecting inmates from harm at the hands of other inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).  To establish a constitutional violation, Pena must show that the conditions of his incarceration posed a

substantial risk of serious harm and that prison officials were deliberately indifferent to his safety.  *See Farmer*, 511 U.S. at 834; *Conquistador v. Adamaitis*, No. 3:19-cv-430(KAD), 2019 WL 1573710, at *2 (D. Conn. Apr. 11, 2019).  Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety.  *See id*. at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that the defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).  The court makes this determination, not in hindsight, but considering the "facts and circumstances of which the official was aware at the time he acted or failed to act."  *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (citations and internal quotation marks omitted).

Pena alleges that he was previously on "rec alone" status at Walker for his protection but was not returned to that status even when he reminded Unit Manager Stanley of that fact and told him of threats from other inmates.  In addition, although he was permitted to recreate alone at Northern, he was sent to recreation with an inmate who attacked him.  Unit Manager Chevalier appeared cavalier about the incident stating only that he need not accommodate Pena.

Both unit managers were aware of Pena's history and concerns but disregarded the threat to his safety.  On initial review, the court credits Pena's characterization of their actions as a deliberate disregard for his safety rather than a failure to appreciate the risk of harm.  The failure to protect or deliberate indifference to safety claims will proceed against defendants Stanley and Chevalier.

Commissioner Cook is not alleged to have directly participated in the incidents underlying this action.  Pena includes Commissioner Cook in this claim because he submitted a

6

request to Commissioner Cook about the actions of the other defendants.

Commissioner Cook is a supervisory official. To state a cognizable claim for supervisor liability, Pena must show that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Pena appears to bring his claim against Commissioner Cook under section five, failing to act on information that unconstitutional acts were occurring.

Knowledge of an isolated incident after the incident is over does not support a claim for supervisory liability. *See Ziemba v. Armstrong*, 430 F.3d 623, 625 (2d Cir. 2005) (insufficient evidence to support claim for supervisory liability where supervisor did not learn of incident until long after it concluded); *Andrews v. Gates*, No. 3:17-cv-1233(SRU), 2019 WL 2930063, at *8 (D. Conn. July 8, 2019) (notice after the fact of an isolated incident insufficient to establish supervisory liability) (citations omitted). Pena has identified two incidents, one at Walker, the other at Northern, both of which he appears to have included in his complaint to Commissioner Cook and which Pena believes are related. At this juncture, the court permits this claim to proceed against Commissioner Cook for further development of the record.

**Orders**

The case will proceed on the excessive force and deliberate indifference to safety/failure

to protect claims and related state law claims against the defendants in their individual capacities only. As Plaintiff does not sue the defendants in their official capacities, any claims for injunctive relief are dismissed.[2]

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address by December 14, 2020, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     T**he Clerk shall** send Pena a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **June 17, 2020.** Discovery requests need not be filed with the court.

---

[2] The court further notes that the prayer for relief requests that the DOC be ordered to negate the Plaintiff's disciplinary ticket for fighting. The DOC is not a defendant.

(6)     All motions for summary judgment shall be filed by **July 17, 2020**.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Pena changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Pena must give notice of a new address even if he is incarcerated.  Pena should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Pena has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Pena should also notify the defendants or the attorney for the defendants of his new address.

(9)     Pena shall utilize the Prisoner Efiling Program when filing documents with the court.  Pena is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Pena.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of November 2020.

/s/
Kari A. Dooley
United States District Judge